1  LINDA WENDELL HSU   (SBN 162971)
   SELMAN BREITMAN LLP
2  33 New Montgomery, Sixth Floor
   San Francisco, CA  94105
3  Telephone: (415) 979-0400
   Facsimile: (415) 979-2099
4  Email:     lhsu@selmanbreitman.com

5  Attorney for Defendant
   Scottsdale Indemnity Company
6

7            UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9

10 CLARENCE JONATHON WOOD and HEIDI       CASE NO.  CV 08 3335 SBA
   COLLINGWOOD,
11                                        **DEFENDANT SCOTTSDALE INDEMNITY
                Plaintiffs,               COMPANY'S MEMORANDUM OF POINTS
12                                        AND AUTHORITIES IN SUPPORT OF
        v.                                MOTION TO DISMISS COMPLAINT**
13
   SCOTTSDALE INDEMNITY CO.; and          Date  : September 23, 2008
14 DOES 1 to 100, inclusive,              Time  : 1:00 p.m.
                                          Ctrm. : No. 3, 3rd Floor
15              Defendants.               Judge : Hon. Saundra Brown
                                                  Armstrong
16

17

18

19

20

21

22

23

24

25

26

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

**Scottsdale's Memorandum of Points and Authorities in Support of Motion to
Dismiss Complaint - CV 08 3335 SBA**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION................................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED........................... 2

III.  FACTUAL BACKGROUND.......................................... 3

      A.    The Inner Tubing Accident............................ 3

      B.    The Underlying Complaints And Resolution............. 3

      C.    The Scottsdale Policy................................ 4

IV.   STANDARD OF REVIEW.......................................... 8

      A.    Motions To Dismiss................................... 8

      B.    Policy Interpretation................................ 9

V.    LEGAL ANALYSIS.............................................. 11

      A.    Plaintiffs May Recover From Scottsdale Only If
            Holz Lindstrom Is An Insured Under The Policy....... 11

      B.    Holz Lindstrom Is Not An Insured Under The Policy... 11

            1.    Holz-Lindstrom Was Not A "Relative" at the
                  Time of the Accident As That Term Is Defined
                  By The Policy................................. 13

            2.    An Inner Tube Is Not A "Watercraft" As
                  Defined By The Policy......................... 13

            3.    Even If An Inner Tube Is A "Watercraft", Holz
                  Lindstrom Is Still Not An Insured............. 16

                  a.    Even If An Inner Tube Is A "Watercraft",
                        Holz Lindstrom Was Not "Using" The Inner
                        Tube As That Term is Defined by the
                        Policy................................. 16

                  b.    Even If An Inner Tube Is A "Watercraft",
                        Holz Lindstrom Had Other Insurance
                        Available For Plaintiffs' Claim.......... 18

      C.    Even If Holz Lindstrom Is An Insured Under The
            Policy, Scottsdale Had No Duty To Defend,
            Investigate Or Settle The Underlying Actions, So
            There Can Be No Valid Claim for Breach Of Contract
            Or Bad Faith As A Matter Of Law...................... 19

      D.    Even If Holz Lindstrom Is An Insured Under The
            Policy, Plaintiffs Have Not Brought This Claim
            Against Scottsdale Within The Contractual Time
            Limitation........................................... 19

VI.   CONCLUSION.................................................. 20

Selman Breitman LLP
ATTORNEYS AT LAW

154720.1 380.25532

i

1

**TABLE OF AUTHORITIES**

2

<u>Page</u>

3

**FEDERAL CASES**

4

*Cahill v. Liberty Mutual Insurance Co.* (9th Cir. 1996)
80 F.3d 336 .......................................... 9, 14

5

*Consolidated American Insurance Co. v. Mike Soper
Marine Services* (9th Cir. 1991)
951 F.2d 186 .......................................... 14

6

7

*De La Cruz v. Tormey* (9th Cir. 1978)
582 F.2d 45 ........................................... 8

8

9

*Imbler v. Pachtman* (1976)
424 U.S. 409 .......................................... 9

10

*In the Matter of the Complaint of McLinn* (1984)
744 F.2d 677 .......................................... 14

11

*Price v. Zim Israel Navigation Co., Ltd.* (9th Cir.
1980)
616 F.2d 422 .......................................... 14

12

13

*Sentry Select Insurance Co. v. Royal Insurance Co. of
America* (9th Cir. 2007)
481 F.3d 1208 ......................................... 14

14

15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.* (2007)
127 S.Ct. 2499 ....................................... 9, 11

16

17

*Upper Columbia River Towing Co. v. Maryland Casualty
Co.* (1963)
313 F.2d 702 .......................................... 14

18

19

*Yang Machine Tool Co. v. Sea-Land Service, Inc.* (9th
Cir. 1995)
58 F.3d 1350 .......................................... 14

20

21

**STATE CASES**

22

*Atlas Assur. Co., Ltd. v. McCombs Corp.* (1983)
146 Cal.App.3d 135 ................................... 10

23

*Aydin Corp. v. First State Insurance Co.* (1998)
18 Cal.4th 1183 ...................................... 9

24

25

*Bank of the West v. Sup.Ct.* (1992)
2 Cal.4th 1254 ....................................... 9

26

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual
Insurance Co.* (1993)
5 Cal.4th 854 ........................................ 10

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

ii

**TABLE OF AUTHORITIES**
(Continued)

Page

*C & H Foods Co. v. Hartford Insurance Co.* (1984)
163 Cal.App.3d 1055 ......................................20

*Cal-Farm Insurance Companies v. Fireman's Fund American Insurance Companies* (1972)
25 Cal.App.3d 1063 ......................................18

*California Casualty Insurance Co. v. Northland Insurance Co.* (1996)
48 Cal.App.4th 1682 .....................................14

*Clemmer v. Hartford Insurance Co.* (1978)
22 Cal.3d 865 ...........................................11

*Fageol Truck & Coach Co. v. Pacific Indemnity Co.* (1941)
18 Cal.2d 748 ...........................................20

*MacKinnon v. Truck Insurance Exch.* (2003)
31 Cal.4th 635 ..........................................10

*Mercedes-Benz Credit Corp. v. Johnson* (2003)
110 Cal.App.4th 53 ......................................17

*Ohio Casualty Inc. Co. v. Hartford Acc. and Indemn. Co.* (1984)
148 Cal.App.3d 641 ......................................14

*Reserve Insurance Co. v. Pisciotta* (1982)
30 Cal.3d 800 ........................................10, 14

*Sarchett v. Blue Shield of Calif.* (1987)
43 Cal.3d 1 ..............................................9

*Scott v. Continental Insurance Co.* (1996)
44 Cal.App.4th 24 .......................................10

*Velasquez v. Truck Ins. Exch.* (1991)
1 Cal.App.4th 712 .......................................20

*Waller v. Truck Insurance Exch., Inc.* (1995)
11 Cal.4th 1 .............................................9

**STATE STATUTES**

California Insurance Code section 11580 ...................19

iii

Selman Breitman LLP
ATTORNEYS AT LAW

154720.1 380.25532

## I.   INTRODUCTION

On May 25, 2002, Kimerly Holz Lindstrom ("Holz Lindstrom") was supervising Plaintiffs' daughter, minor Kayla Wood, while Ms. Wood was on an inner tube in the Trinity River. Holz Lindstrom was the live-in girlfriend of Ms. Wood's father, plaintiff Clarence Jonathan Wood. Ms. Wood drowned while using the inner tube. Plaintiffs filed wrongful death actions against Holz Lindstrom's parents, Ralph and Pamela Lindstrom ("the Lindstroms"), and Holz Lindstrom in Humboldt County Superior Court. Plaintiffs sued the Lindstroms because they owned the inner tube at issue, and as mentioned above, Holz Lindstrom was supervising Ms. Wood when the tragic incident occurred.

The Lindstroms obtained summary judgment in the wrongful death suits. Holz Lindstrom then settled with plaintiffs, who obtained money from primary insurance carriers, and then gave plaintiffs an assignment of rights to any proceeds available from the Scottsdale policy for a judgment which exceeded the settlement amount.

Defendant Scottsdale Insurance Company issued a Personal Umbrella Liability Policy to the Lindstroms. Plaintiffs assert that Holz Lindstrom is an insured under the Policy and that she assigned valid rights against Scottsdale to Plaintiffs.

The only way Plaintiffs recover anything from Scottsdale is if the Policy provides coverage to Holz Lindstrom. However, Scottsdale owes no coverage obligations to Holz Lindstrom because she is not an insured under the Policy. Moreover, even if Holz Linstrom is an insured, Scottsdale had no duties under its excess policy to defend, investigate or settle the underlying suits,

**Scottsdale's Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint - CV 08 3335 SBA**

Selman Breitman LLP
ATTORNEYS AT LAW

1  such that plaintiffs have no claim for breach of contract and bad

2  faith as a matter of law.  Finally, the Payment of Loss provision

3  in the Policy limits the time within which plaintiffs may make a

4  claim on the Policy, and plaintiffs failed to bring this suit

5  within that time period.  For all of these reasons, this motion

6  to dismiss should be granted without leave to amend.

7  **II.    STATEMENT OF ISSUES TO BE DECIDED**

8      1.   Is an inner tube a "watercraft" as that term is defined

9  by the Policy, such that Holz Linstrom is considered an insured

10  under the policy?

11      2.   If an inner tube is not a "watercraft,", is Holz

12  Lindstrom a "relative" of the named insured as that term is

13  defined by the Policy, such that Holz Lindstrom is considered an

14  insured under the Policy?

15      3.   If an inner tube is a "watercraft" as defined by the

16  Policy:

17          A.   Was Holz Lindstrom "using" the inner tube as

18               required to be an insured?

19          B.   Was other insurance available to Holz Lindstrom

20               for Plaintiffs' claim which would preclude Holz

21               Lindstrom from being an insured?

22      4.   Can plaintiffs, as assignees under the Policy, state a

23  claim for breach of contract or bad faith when Scottsdale had no

24  primary duties to defend, investigate or settle the underlying

25  wrongful death suits?

26      5.   Does the Payment of Loss contractual time limitation

27  preclude this claim against Scottsdale?

28  / / /

**Selman Breitman** LLP
ATTORNEYS AT LAW

2

1    / / /

2    / / /

3    III.  <u>FACTUAL BACKGROUND</u>

4        A.    <u>The Inner Tubing Accident</u>

5        Plaintiffs are the surviving parents of minor Kayla Wood.

6    <u>Scottsdale's Index Of Exhibits ("SIOE"), Exhibit "A"</u>, ¶ 3.  On

7    May 25, 2002, Kayla Wood went inner tubing in the Trinity River

8    while in the custody of Holz Lindstrom, the live-in girlfriend of

9    Plaintiff Clarence Jonathon Wood.  <u>SIOE Exhibit "A"</u>, ¶ 10; <u>SIOE</u>

10   <u>Exhibit "B"</u>, p. 3; <u>SIOE Exhibit "C"</u>, pp. 1, 5.

11       The inner tube used by Kayla Wood was owned by the

12   Lindstroms.  <u>SIOE Exhibit "B"</u>, p. 8; <u>SIOE Exhibit "C"</u>, p. 6.

13   Ralph Lindstrom allowed Kayla Wood to choose her inner tube and

14   dropped her off, along with Holz Lindstrom and 3 other children,

15   at the Trinity River.  <u>SIOE Exhibit "B"</u>, p. 8; <u>SIOE Exhibit "C"</u>,

16   p. 6.  Holz Lindstrom was the only adult on the inner tubing

17   trip.  <u>SIOE Exhibit "C"</u>, p. 6.  While inner tubing, Kayla Wood

18   got trapped in the roots of a downed tree (<u>SIOE Exhibit "B"</u>,

19   p. 1) and drowned.  <u>SIOE Exhibit "A"</u>, ¶ 10.

20       B.    <u>The Underlying Complaints And Resolution.</u>

21       On July 12, 2002, Plaintiff Heidi Collingwood, Kayla Wood's

22   mother, filed suit against Holz Lindstrom and the Lindstroms in

23   Humboldt County Superior Court, case number DR020419, for

24   wrongful death and exemplary damages.  <u>SIOE Exhibit "A"</u>, ¶ 11;

25   <u>SIOE Exhibit "D"</u>.  On November 6, 2002, Plaintiff Wood, Kayla

26   Wood's father, filed suit in Humboldt County Superior Court, case

27   number DR020685, against Holz Lindstrom and the Lindstroms for

28   General Negligence alleging that the defendants were negligently

Selman Breitman LLP
ATTORNEYS AT LAW

3

1   responsible for Kayla Wood's death.   SIOE Exhibit "A", ¶ 11; SIOE
2   Exhibit "E".

3       On June 2, 2004, the Court in the underlying action entered
4   judgment in favor of the Lindstroms and the underlying action
5   thereafter proceeded against Holz Lindstrom only.   SIOE Exhibit
6   "A", ¶ 13.   On or about April 24, 2006, Holz Lindstrom entered
7   into a settlement with Plaintiffs, the terms of which included
8   payment of $800,000 by underlying insurer Hartford Casualty
9   Company and other insurer Foremost Insurance Company for their
10  primary insurance policy limits on behalf of Holz Lindstrom, in
11  exchange for a covenant by Plaintiffs not to execute upon any
12  judgment in excess of that amount against Holz Lindstrom, and an
13  assignment from Holz Lindstrom to plaintiffs of any claims she
14  might have against other insurers (including Scottsdale.   SIOE
15  Exhibit "A", ¶¶ 5, 16, 18.   The settlement agreement also stated
16  that plaintiffs' total damages would be determined by the court.
17  Id.

18      On August 30, 2006, the court determined damages to be $5
19  million plus recoverable costs.   SIOE Exhibit "A", ¶ 19; SIOE
20  Exhibit "F".   Plaintiffs filed this action against Scottsdale on
21  May 23, 2008 in an attempt to recover that judgment.   SIOE
22  Exhibit "A".

23      **C.   The Scottsdale Policy**

24      Scottsdale Indemnity Company issued Policy No. PUI0020229, a
25  "Personal Umbrella Liability Policy," to Ralph L. and Pamela W.
26  Lindstrom, effective May 31, 2001 to May 31, 2002.   SIOE Exhibit
27  "A", ¶ 5; SIOE Exhibit "H".   The Policy's Schedule of Underlying
28  Insurance identifies Hartford Casualty Insurance as the

Selman Breitman LLP
ATTORNEYS AT LAW

**Scottsdale's Memorandum of Points and Authorities in Support of Motion to
Dismiss Complaint - CV 08 3335 SBA**

underlying insurance carrier for comprehensive personal liability for homeowners.  SIOE Exhibit "H".  The Policy states limits of liability of $1,000,000 each occurrence for bodily injury, personal injury, and property damage liability coverage.  Id. The Policy states under Coverage A – Excess Bodily Injury and Property Damage Liability that Scottsdale will pay on behalf of the insured the amount of ultimate net loss, which the insured becomes legally obligated to pay:

> 1) in excess of the underlying limits (whether collectible or not) because of bodily injury, personal injury, or property damage to which this policy applies, caused by an occurrence; or

> 2) in excess of the retained limit because of bodily injury, personal injury, or property damage to which this policy applies, caused by an occurrence which is not covered by or which is not required to be covered by the underlying insurance.

SIOE Exhibit "H".  In this case, paragraph (1) applies because underlying limits were collected by Hartford, as discussed above.

The Policy then provides in relevant part:

> III. DEFENSE AND SETTLEMENT

>> A.  With respect to occurrences which are covered under Coverage A of this policy but which are not covered or required to be covered by the underlying insurance, the Company, if no other insurer has an obligation to do so, shall defend any suit against the insured seeking damages on account of bodily injury, personal injury, or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent; and the Company shall have the right to make such investigation and settlement of any claims or suit as it deems expedient.

>> B.  Except as specifically provided under A. above, the Company shall have no duty or obligation to assume the responsibility for the investigation, settlement, or defense of:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Selman Breitman LLP**
ATTORNEYS AT LAW

> > 1.   any claim made or suit brought against
> >      the insured under Coverage A;
> >
> >                    . . .
> >
> > but the Company shall have the right and
> > shall be given the opportunity to investigate
> > and to be associated in the control of any
> > claim or suit which may, in the Company's
> > opinion, create liability on the part of the
> > Company under the terms of this policy.
> >
> > C.   The Company shall not be obligated to pay any
> >      claim or judgment or to defend any suit after
> >      the applicable limit of the Company's
> >      liability has been exhausted by the payment
> >      of judgments or settlements.
> >
> >      SIOE Exhibit "H" (emphasis added).

   In this case, part B of the Defense and Settlement provision

applies because the subject occurrence was covered by underlying

insurance, as discussed above.

   The Policy also contains the following Persons Insured

provision:

> VI.   PERSONS INSURED
>
>    A.   Each of the following is an insured under
>         Coverage A to the extent set forth below:
>
>       1.   With respect to automobiles or
>            <u>watercraft to which this policy
>            applies</u>:
>
>                    . . .
>            c.   Any of the following, while using
>                 the automobile or watercraft owned
>                 by or in the care of the named
>                 insured;
>
>                 (i)   Any person <u>using</u> an
>                       automobile or watercraft with
>                       the permission of the named
>                       insured and for the purposes
>                       intended by the named
>                       insured.
>
>                 (ii)  Any person or organization
>                       legally responsible for the
>                       use of such automobile or
>                       watercraft, <u>but only if no</u>

6

**Scottsdale's Memorandum of Points and Authorities in Support of Motion to
Dismiss Complaint - CV 08 3335 SBA**

1
<u>other insurance of any kind
is available to that person
or organization for such
liability.</u>

2

3                         . . .

4          3.   Except as provided under (1) and (2)
               above:
5
                         . . .
6
           b.   Any relative.
7
     <u>SIOE Exhibit "H"</u> (emphasis added).
8

9   The Policy also includes the following relevant Conditions:

10      E.   Action against the Company

11          1.   No action shall lie against the Company
               under Coverage A unless, as a condition
12             precedent thereto
                         . . .
13
           b.   The insured shall have paid or
14             shall have become legally obligated
               to pay the full amount of the
15             underlying limits;
                         . . .
16
           c.   Any applicable retained limit
17             (self-insured retention) shall have
               been paid by or on behalf of the
18             insured;

19          d.   The amount of the insured's obligation
               to pay ultimate net loss shall have been
20             finally determined.
                         . . .
21
        F.   Payment of Loss
22
                         . . .
23
           3.   Any claim against the Company by the insured
               under either Coverage A or Coverage B of this
24             policy shall be made within twelve months
               after the insured:
25
           (a)   pays or becomes legally obligated to pay an
26             amount of ultimate net loss within
               [Scottsdale's] limit of liability under
27             Coverage A[ }.

28

Selman Breitman LLP
ATTORNEYS AT LAW

1    <u>Id</u>.   Finally, the Definitions Section of the Policy defines the

2    following relevant terms:

3        "Insured" means any person or organization qualifying
         as an insured in the "Persons Insured" provision of
4        this policy.  The insurance afforded applies separately
         to each insured against whom claim is made or suit is
5        brought, except with respect to the limits of the
         Company's liability;

6

         "Relative" means any person related to the named
7        insured by blood, adoption, or marriage (other than the
         spouse of the named insured) <u>who is a resident of the</u>
8        <u>named insured's household</u>.

9        "Ultimate Net Loss" means the sum actually paid as
         damages, as determined by:
10

11       (1)   a judgment against the insured in a suit on the
               merits, or
12
         (2)   as settlement of a claim or suit with the prior
13             written consent of the Company,

14       Less all recoveries and salvages; but "ultimate net
         loss" does not include:
15
               (a)   interest on judgments, or
16
               (b)   investigation, settlement, and legal
17                   expenses, including taxed court costs and
                     premiums on bonds;

18       "Underlying Insurance" means the insurance policies
         scheduled in Item 7 of the Declarations; "use", "uses",
19       "used", and "using" mean maintaining, entrustment to
         others, operating, loading, or unloading.
20
         "use", "uses", "used", and "using" mean maintaining,
21       entrustment to others, operating, loading, or
         unloading.
22
         "watercraft" means any craft, boat, vessel, or ship
23       designed to transport persons or property on water.

24   <u>Id</u>. (emphasis added).

25   **IV.   STANDARD OF REVIEW**

26       **A.   Motions To Dismiss**

27       A Rule 12(b)(6) motion to dismiss tests the legal

28   sufficiency of a claim.  Where plaintiff can prove no set of

Selman Breitman LLP
ATTORNEYS AT LAW

1    facts in support of his claim entitling him to relief, the claim

2    should be dismissed. De La Cruz v. Tormey (9th Cir. 1978) 582

3    F.2d 45, 48.  Where an affirmative defense or other bar to relief

4    is apparent from the face of the complaint, the claim should also

5    be dismissed. Imbler v. Pachtman (1976) 424 U.S. 409, 47 L. Ed.

6    2d 128, 96 S. Ct. 984.  In making this determination, a court (1)

7    construes the complaint in the light most favorable to the

8    plaintiff, (2) accepts the well-pleaded factual allegations as

9    true, and (3) determines whether the plaintiff can prove any set

10   of facts to support a claim that would merit relief. Cahill v.

11   Liberty Mutual Ins. Co. (9th Cir. 1996) 80 F.3d 336, 337-338.

12       Courts must also consider documents incorporated into the

13   complaint by reference and matters of which a court may take

14   judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd.

15   (2007) 127 S.Ct. 2499, 2509.

16   **B.    Policy Interpretation**

17       The burden is on the alleged insured (or her assignees) to

18   make a prima facie showing that the third party claim falls

19   within the insuring provisions of the policy. Aydin Corp. v.

20   First State Ins. Co. (1998) 18 Cal.4th 1183, 1188.  Thus,

21   plaintiffs have the burden of proving that their assignor, Holz

22   Lindstrom, is an insured under her parents' policy, a burden they

23   will be unable to meet.

24       The interpretation of an insurance policy is a question of

25   law. Waller v. Truck Ins. Exch., Inc. (1995) 11 Cal.4th 1, 18.

26   "Clear and explicit" policy language governs. Bank of the West

27   v. Sup.Ct. (1992) 2 Cal.4th 1254, 1264.  Where the policy is

28   clear and unequivocal, the only thing the insured may "reasonably

Selman Breitman LLP
ATTORNEYS AT LAW

1    expect" is the coverage afforded by the plain language of the

2    mutually agreed-upon terms.   Sarchett v. Blue Shield of Calif.

3    (1987) 43 Cal.3d 1, 15.

4        Unambiguous policy language cannot be challenged because the

5    insured allegedly misunderstood its meaning:   "Under the

6    objective test of contract formation, a 'meeting of the minds' is

7    unnecessary.   A party is bound, even if he misunderstood the

8    terms of a contract and actually had a different, undisclosed

9    intention."   Atlas Assur. Co., Ltd. v. McCombs Corp. (1983) 146

10   Cal.App.3d 135, 144.

11       To construe words in an insurance policy in their "ordinary

12   and popular sense," courts often utilize dictionary definitions.

13   Scott v. Continental Ins. Co. (1996) 44 Cal.App.4th 24, 29.   A

14   court may also use its own knowledge of common usage to determine

15   the meaning of words in an insurance policy.   MacKinnon v. Truck

16   Ins. Exch. (2003) 31 Cal.4th 635, 654.   The words in an insurance

17   policy are understood in their "common sense." Strained and

18   illogical interpretations are rejected.   Bank of the West, supra,

19   at 1276.

20       An alleged ambiguity in policy language cannot be based on a

21   strained or grammatically incorrect interpretation of the policy

22   language: "Courts will not adopt a strained or absurd

23   interpretation in order to create an ambiguity where none

24   exists."   Reserve Ins. Co. v. Pisciotta (1982) 30 Cal.3d 800,

25   807.   An insurance policy provision is only considered ambiguous

26   when it is capable of two or more constructions, both of which

27   are reasonable.   Bay Cities Paving & Grading, Inc. v. Lawyers'

28   Mut. Ins. Co. (1993) 5 Cal.4th 854, 867.

Selman Breitman LLP
ATTORNEYS AT LAW

10

As will be shown below, the plain and unambiguous language of the Policy, construed in its ordinary and popular sense, shows that Holz Lindstrom is not an insured under the Policy.  Even if she is an insured, the excess policy issued by Scottsdale did not require it to defend, investigate or settle the underlying wrongful death suits until a judgment was entered, which means there can be no claim for breach of contract or bad faith as a matter of law.  Moreover, plaintiffs, as assignees of Holz Lindstrom, are bound by the twelve-month time limitation under the Policy, which they failed to meet.  For all of these reasons, Plaintiffs cannot state an assigned claim for breach of contract or bad faith against Scottsdale as a matter of law, and this motion to dismiss should be granted without leave to amend.

**V.    LEGAL ANALYSIS**

**A.    Plaintiffs May Recover From Scottsdale Only If Holz Lindstrom Is An Insured Under The Policy.**

In order to transfer rights to a third party, a party must first be entitled to the right being transferred.  See Clemmer v. Hartford Ins. Co. (1978) 22 Cal.3d 865, 889.

Here, Plaintiffs are not insureds under the Policy and their recovery turns on whether they properly obtained rights against Scottsdale.  In order for Holz Lindstrom to assign rights to Plaintiffs, she first had to be entitled to those rights – namely, she must be an insured to assign recoverable rights to Plaintiffs.

**B.    Holz Lindstrom Is Not An Insured Under The Policy.**

The Policy is incorporated by reference in paragraph 5 of the Complaint and the court should consider its terms in deciding

11

Selman Breitman LLP
ATTORNEYS AT LAW

154720.1 380.25532

1  the motion to dismiss.  *Tellabs*, 127 S.Ct. at 2509.  As cited

2  above, the Policy defines an insured in pertinent part as

3  follows:

4      VI.  PERSONS INSURED

5          A.   Each of the following is an insured under
                 Coverage A to the extent set forth below:

6

7              1.   With respect to automobiles or watercraft to
                      which this policy applies:
                                . . .

8

9                  c.   Any of the following, while using
                         the automobile or watercraft owned

10                       by or in the care of the named
                         insured;

11                      (i)   Any person using an automobile
                               or watercraft with the

12                             permission of the named
                               insured and for the purposes

13                             intended by the named insured.

14                      (ii)  Any person or organization
                               legally responsible for the

15                             use of such automobile or
                               watercraft, but only if no

16                             other insurance of any kind is
                               available to that person or

17                             organization for such
                               liability.

18                                . . .

19             3.   Except as provided under (1) and (2)
                      above:

20                                . . .

21                 b.   Any relative.

22      Thus, in order for Holz Lindstrom to be considered an

23  insured under the Policy, Holz Lindstrom must either be a

24  "relative" of the named insured, as that term is defined by the

25  Policy; or (1) the inner tube must be a "watercraft" as that term

26  is defined by the Policy , (2) the "watercraft" must be one "to

27  which this policy applies", and (3) Holz Lindstrom must have been

28  either "using" the "watercraft", or no other insurance was

Selman Breitman LLP
ATTORNEYS AT LAW

1    available to Holz Lindstrom.  Plaintiffs cannot meet their burden

2    of proving any of the above, such that Holz Lindstrom is not an

3    insured under the Policy, and plaintiffs' claims fail.

4         **1.    Holz-Lindstrom Was Not A "Relative" at the Time of
              the Accident As That Term Is Defined By The Policy**
5

6         If the inner tube is not a "watercraft," which it is not as

7    discussed below, then Holz Lindstrom is not a person insured

8    under the policy, because she is not a "relative" of the

9    Lindstroms as defined by the Policy.  While she is blood-related

10   to Ralph L. Lindstrom, a named insured, she did not reside with

11   the Lindstroms at the time of the accident; rather, she lived

12   with plaintiff Clarence Jonathon Wood.  SIOE Exhibit "B", p. 3;

13   SIOE Exhibit "C", pp. 1, 5.  The Policy requires Holz Lindstrom

14   to reside with the Lindstroms at the time of the accident, and

15   she did not.  Therefore, she is not an insured under Section

16   3(b).

17

18        **2.    An Inner Tube Is Not A "Watercraft" As Defined By
              The Policy.**
19

20        The only other way Holz Lindstrom is an insured under the

21   Policy is if the subject inner tube is a "watercraft."  As

22   mentioned above, the Definitions Section of the Policy defines

23   the term "watercraft" to mean "any craft, boat, vessel, or ship

24   designed to transport persons or property on water."  An inner

25   tube is not a "craft," "boat, "vessel" or "ship" within the

26   common meaning of those terms.

27        Regarding the term "craft", the doctrine of *ejusdem generis*

28   provides that "where general words follow an enumeration of

Selman Breitman LLP
ATTORNEYS AT LAW

13

1    persons or things, by words of a particular and specific meaning,

2    such general words are not to be construed in their widest

3    extent, but are to be held as applying only to persons or things

4    of the same general kind or class as those specifically

5    mentioned." Cahill, 80 F.3d at 338, n. 2.  Under this doctrine,

6    courts will look to the terms "boat," "vessel" and "ship" in

7    order to give meaning to the word "craft," and an inner tube

8    clearly does not fall within the same class as "boat," "vessel,"

9    or "ship".

10    No case authority holds that an inner tube is a watercraft.

11    However, case law shows that a "watercraft" has been defined to

12    include ocean carrier vessels (Yang Machine Tool Co. v. Sea-Land

13    Service, Inc. (9th Cir. 1995) 58 F.3d 1350); cargo vessels (Price

14    v. Zim Israel Navigation Co., Ltd. (9th Cir. 1980) 616 F.2d 422);

15    boats (California Cas. Ins. Co. v. Northland Ins. Co. (1996) 48

16    Cal.App.4th 1682; Ohio Cas. Inc. Co. v. Hartford Acc. and Indemn.

17    Co. (1984) 148 Cal.App.3d 641; Reserve Ins. Co. v. Pisciotta

18    (1982) 30 Cal.3d 800); barges (Sentry Select Ins. Co. v. Royal

19    Ins. Co. of Am. (9th Cir. 2007) 481 F.3d 1208; Consolidated

20    American Ins. Co. v. Mike Soper Marine Services (9th Cir. 1991)

21    951 F.2d 186; Upper Columbia River Towing Co. v. Maryland Cas.

22    Co. (1963) 313 F.2d 702); and skiffs (In the Matter of the

23    Complaint of McLinn (1984) 744 F.2d 677).  Inner tubes simply are

24    not in the same category as ocean carrier vessels, cargo vessels,

25    boats, barges, or skiffs.

26    In addition, as cited above, the dictionary meaning of

27    "craft", as well as the terms "boat," "vessel" and "ship" is

28    relevant to determine whether a reasonable person would consider

14

Selman Breitman LLP
ATTORNEYS AT LAW

154720.1 380.25532

1  an "inner tube" to be a "watercraft" within the meaning of the

2  Policy.  The dictionary definition of "craft" is "a boat, ship,

3  or aircraft."  SIOE Exhibit "G".  An inner tube does not fit any

4  of these definitions; it is not a boat, ship, or aircraft.

5  Rather, "inner tube" is defined as "a flexible airtight hollow

6  ring, usu. made of rubber, inside a pneumatic tire for holding

7  compressed air."  SIOE Exhibit "G".

8      In contrast, the dictionary definition of "boat" is "a

9  relatively small, usually open craft of a size that might be

10  carried aboard ship; an inland vessel of any size; ship or

11  submarine."  SIOE Exhibit "G".  The dictionary definition of

12  "vessel" is "Naut. A craft, esp. one larger than a rowboat,

13  designed to navigate on water."  SIOE Exhibit "G".  And finally,

14  the dictionary definition of "ship" is "a vessel of considerable

15  size for deep-water navigation.  A sailing vessel having three or

16  more square-rigged masts."  SIOE Exhibit "G".

17      The definition of "inner tube" does not encompass a means of

18  transportation over water, which is the common understanding of

19  the purpose of a "watercraft" and which is part of the definition

20  of "watercraft" in the Policy.  An inner tube is part of a tire,

21  not a "craft."  To find that an "inner tube" is a "watercraft"

22  under the Policy would be equivalent to finding that a piece of

23  plywood, a kickboard, or a floating chair are "watercraft," and

24  such an outcome would be absurd.  Stated another way, if an

25  accident occurred with an inner tube in a swimming pool, where

26  inner tubes are often used, it is hard to conceive of any

27  reasonable person calling it a "watercraft."

28      Moreover, the "Persons Insured" provision at issue provides

Selman Breitman LLP
ATTORNEYS AT LAW

1   permissive use coverage for "automobiles" and "watercraft."  It

2   would be illogical to define someone as having permissive use of

3   an inner tube in the way a reasonable person would consider

4   having permissive use of an "automobile."  In short, it makes no

5   sense to treat "automobiles" and "inner tubes" similarly, which

6   is the strained construction the court would have to exercise in

7   order to find that the inner tube at issue in this case is a

8   "watercraft."

9       The rules of policy interpretation require the court to

10  reject any "strained and illogical interpretation" of

11  "watercraft".  Bank of the West, supra, at 1276.  Therefore,

12  Plaintiffs are unable to meet their burden of proving that Holz

13  Lindstrom is an insured, and Scottsdale's motion to dismiss

14  should be granted without leave to amend.

15          **3.   Even If An Inner Tube Is A "Watercraft", Holz
                   Lindstrom Is Still Not An Insured.**
16

17      Even if the inner tube is considered a "watercraft," Holz

18  Lindstrom is not an insured because she was not "using" the inner

19  tube and because she had other insurance available.

20              **a.   Even If An Inner Tube Is A "Watercraft", Holz
                       Lindstrom Was Not "Using" The Inner Tube As
21                     That Term is Defined by the Policy.**

22      In order for Holz Lindstrom to be an insured, she must have

23  been "using" the "watercraft" at the time of the incident.  Holz

24  Lindstrom was not "using" the inner tube which was involved in

25  Kayla Wood's death at the time of the incident.  Rather, Kayla

26  Wood was "using" the inner tube at issue.  SIOE Exhibits "B" and

27  "C".

28      "Using" is defined in the Policy as "maintaining,

Selman Breitman LLP
ATTORNEYS AT LAW

1    entrustment to others, operating, loading, or unloading." Holz

2    Lindstrom clearly was not maintaining, operating, loading or

3    unloading the inner tube at the time of the incident. Rather,

4    she was riding a different inner tube ahead of Kayla Wood. SIOE

5    Exhibits "B" and "C."

6        Holz Lindstrom also did not "entrust" the inner tube to

7    Kayla Wood. Entrust means "'[t]o give over to another something

8    after a relation of confidence has been established. To deliver

9    to another something in trust or to commit something to another

10    with a certain confidence regarding his care, use or disposal of

11    it.'" Mercedes-Benz Credit Corp. v. Johnson (2003) 110

12    Cal.App.4th 53, 59. Holz Lindstrom did not deliver the inner

13    tube to Kayla Wood in any relation of confidence. She remained

14    with Kayla Wood and the inner tube and was the responsible adult

15    present at the site. SIOE Exhibits "B" and "C." The fact that

16    Kayla Wood was "using" the inner tube under the supervision of

17    Holz Lindstrom means that Holz Lindstrom could not have been

18    "entrust[ing]" the inner tube to Kayla Wood. Holz Lindstrom did

19    not "entrust" the inner tube to anyone as she remained present to

20    be responsible for the children. SIOE Exhibits "B"and "C."

21        In short, Kayla Wood was "using" the inner tube, not Holz

22    Lindstrom. As Holz Lindstrom did not entrust the inner tube to

23    Kayla Wood, and she was clearly not maintaining, operating,

24    loading or unloading the inner tube at the time of the incident,

25    Holz Lindstrom was not "using" the inner tube as defined by the

26    Policy. Holz Lindstrom therefore does not qualify as an insured

27    on that basis.

28

Selman Breitman LLP
ATTORNEYS AT LAW

**Scottsdale's Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint - CV 08 3335 SBA**

Selman Breitman LLP
ATTORNEYS AT LAW

1
2
      **b.    Even If An Inner Tube Is A "Watercraft", Holz Lindstrom Had Other Insurance Available For Plaintiffs' Claim.**

3      Holz Lindstrom also would not qualify as an "insured" under

4 definition c.(ii), because that provision grants insured status

5 "only if no other insurance of any kind is available to that

6 person or organization for such liability." <u>SIOE, Exhibit "H."</u>

7 Both Foremost Insurance Company and Hartford Insurance Company

8 paid their policy limits totaling $800,000 to the Plaintiffs on

9 Holz Lindstrom's behalf. <u>SIOE Exhibit "A"</u>, ¶ 16. Accordingly,

10 there was other insurance that applied to Holz Lindstrom's

11 liability, and she does not qualify as an "insured" under

12 definition c.(ii) for this reason.

13      The California Court of Appeal has upheld a similar

14 limitation on coverage when the permissive user's own policy had

15 the minimum limits required for automobile liability coverage

16 under California law. <u>Cal-Farm Ins. Companies v. Fireman's Fund</u>

17 <u>American Ins. Companies</u> (1972) 25 Cal.App.3d 1063, 1066. Based

18 on the <u>Cal Farm</u> case and the above discussion, this Court should

19 find that Scottsdale has no duty under its personal umbrella

20 policy to provide permissive user coverage to Holz Lindstrom,

21 even assuming that the "inner tube" is found to be a

22 "watercraft." The Policy's limitation on permissive user

23 coverage for watercraft, i.e., that it applies "only if no other

24 insurance of any kind is available to that person or organization

25 for such liability" is unambiguous and enforceable and precludes

26 insured status to Holz Lindstrom.

27
28

154720.1 380.25532

**C.** **Even If Holz Lindstrom Is An Insured Under The Policy, Scottsdale Had No Duty To Defend, Investigate Or Settle The Underlying Actions, So There Can Be No Valid Claim for Breach Of Contract Or Bad Faith As A Matter Of Law**

The Policy states in the Defense and Settlement section that if underlying insurance covers the loss, Scottsdale has "no duty or obligation to assume the responsibility for the investigation, settlement, or defense of … any claim made or suit brought against the insured[.]" SIOE Exhibit "H". In this case, underlying insurer Hartford paid part of a settlement on Holz Lindstrom's behalf. As such, Scottsdale had no duty to defend, investigate or settle the claim on behalf of Holz Lindstrom. See Diamond Heights Homeowners Assn. v. National American Ins. Co. (1991) 227 Cal.App.3d 563, 577.

No action lies against Scottsdale until "[t]he amount of the insured's obligation to pay ultimate net loss shall have been finally determined." SIOE Exhibit "M". Thus, Scottsdale had no duties to any insured until the judgment was entered against Holz Lindstrom.

Therefore, plaintiffs can state no claim for breach of contract or bad faith against Scottsdale as a matter of law. At best, plaintiffs have a possible claim as a judgment creditor under California Insurance Code section 11580.

**D.** **Even If Holz Lindstrom Is An Insured Under The Policy, Plaintiffs Have Not Brought This Claim Against Scottsdale Within The Contractual Time Limitation.**

The Policy contains a Payment of Loss provision under the Conditions section of the Policy which contains a limitation of time to make a claim against Scottsdale. That provision states in relevant part:

Selman Breitman LLP
ATTORNEYS AT LAW

19

**Scottsdale's Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint - CV 08 3335 SBA**

Selman Breitman LLP
ATTORNEYS AT LAW

> Any claim against the Company by the insured
> under either Coverage A or Coverage B of this
> policy shall be made within twelve months
> after the insured:
>
> (a)  pays or becomes legally obligated to pay an
>      amount of ultimate net loss within
>      [Scottsdale's] limit of liability under
>      Coverage A.

California has long recognized the right of an insurer to limit the time in which an insured may make a claim against the insurer.  See Fageol Truck & Coach Co. v. Pacific Indem. Co. (1941) 18 Cal.2d 748, 753; C & H Foods Co. v. Hartford Ins. Co. (1984) 163 Cal.App.3d 1055, 1064.  These provisions are enforceable as long as they are clearly stated in the policy and do not shorten the time to an unreasonable time period.  Ibid. Such policy-made time limitations are applicable in bad faith actions as well as actions on contract.  See Velasquez v. Truck Ins. Exch. (1991) 1 Cal.App.4th 712, 719-21.

The alleged insured, Holz Lindstrom, had judgment entered against her for $5 million plus costs on August 30, 2006.  SIOE Exhibit "F".  Plaintiffs, as assignees to Holz Lindstrom's rights, did not bring this action against Scottsdale until well over twelve months later, on May 23, 2008.  SIOE Exhibit "A". This is well beyond the twelve month period from the date of Holz Lindstrom's payment obligation.  As such, this Court should grant Scottsdale's motion to dismiss without leave to amend.

VI.  **CONCLUSION**

For the above-stated reasons, Scottsdale respectfully requests that the operative complaint be dismissed without leave to amend.

20

154720.1 380.25532

1

2    DATED: July 29, 2008          SELMAN BREITMAN LLP

3

4                                  By: _____
                                       LINDA WENDELL HSU (SBN 162971)
5                                      Attorney for Defendant
                                       SCOTTSDALE INDEMNITY COMPANY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Scottsdale's Memorandum of Points and Authorities in Support of Motion to
Dismiss Complaint - CV 08 3335 SBA

154720.1 380.25532

**PROOF OF SERVICE**

Clarence Jonathon Wood and Heidi Collingwood v. Scottsdale Indemnity Company

United States District Court Northern District of California Case No. CV 08 3335 SBA

I am employed in the County of San Francisco, State of California. I am over the age of 18 years and am not a party to the within action; my business address is 33 New Montgomery, Sixth Floor, San Francisco, CA 94105. On **July 29, 2008**, I served the following document(s) described as **DEFENDANT SCOTTSDALE INDEMNITY COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT** on the interested parties in this action as follows:

by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| David P. Dibble, Esq.<br>Law Offices of David P. Dibble<br>123 F Street, Suite D<br>Eureka, CA 95501<br>(707) 444-9330 | Attorneys For Plaintiff CLARENCE JONATHON WOOD |
| Zachary E. Zwerdling, Esq.<br>Law Office Of Zachary E. Zwerdling<br>123 F Street, Suite C<br>Eureka, CA 95501<br>(707) 445-9628 | Attorneys For Plaintiff HEIDI COLLINGWOOD |

☒ **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to FEDERAL EXPRESS for delivery to the addressee(s).

☐ **BY E-MAIL:** I transmitted a copy of the foregoing documents(s) via e-mail to the addressee(s).

☐ **BY FAX:** I transmitted a copy of the foregoing documents(s) via telecopier to the facsimile numbers of the addressee(s), and the transmission was reported as complete and without error.

☐ **BY PERSONAL SERVICE:** I personally delivered such envelope by hand to the offices of the addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **July 29, 2008**, at San Francisco, California.

LAURA TALESNIK

153965.1  380.25532

1