1  David P. Dibble, Esq.   #73938
   ZWERDLING DIBBLE, LLP
2  123 F Street, Suite D
   Eureka, CA 95501
3  Telephone:  (707) 444-9330
   Facsimile:  (707) 443-0442
4
   Attorneys for Plaintiff Clarence Jonathon Wood
5
   Zachary E. Zwerdling, Esq.
6  LAW OFFICES OF ZACHARY ZWERDLING
   123 F Street, Suite C
7  Eureka, CA 95501
   Telephone: (707) 445-9628
8  Facsimile: (707) 443-0442

9  Attorneys for Plaintiff Heidi Collingwood

10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12

13  CLARENCE JONATHON WOOD, HEIDI          NO.    CV 08 3335 SBA
    COLLINGWOOD,
14                                         PLAINTIFFS' MEMORANDUM OF
                                           POINTS AND AUTHORITIES IN
         Plaintiffs,                       OPPOSITION TO MOTION TO DISMISS
15                                         COMPLAINT OF DEFENDANT
    vs.                                    SCOTTSDALE INDEMNITY COMPANY
16
    SCOTTSDALE INDEMNITY COMPANY
17  and Does 1 through 100, inclusive,     Date:      September 23, 2006
                                           Time:      1:00 pm
18       Defendants.                       Ctrm:      No. 3, 3rd floor
                                           Judge      Hon. Saundra Brown
19  _____/                 Armstrong

20

21

22

23

24

25

26

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 1

II.    STATEMENT OF ISSUES TO BE DECIDED .................................. 1

III.   STATEMENT OF RELEVANT FACTS ........................................ 2

IV.    ARGUMENT ..................................................................... 3

       A Motion To Dismiss That Is Really A Motion For Summary Judgment ...... 3

       Guidelines for Interpretation of This Contract ................................. 4

A.     Was Kimberly an Insured Under the Scottsdale Policy? ...................... 6

       1.     Is an Inner Tube a "Watercraft" Within the Meaning of the Policy? .......... 6

              A.     An Insured Can Reasonably Expect That Inner Tubes Are "Craft"   6

              B.     These Inner Tubes Were Designed to Transport People or
                     Property On Water ....................................................... 9

       2.     Was Kimberly Holz Lindstrom "Using" the Inner Tube
              at the Time of the Drowning? ................................................ 12

       3.     Did Kimberly Have "Other Insurance" ...................................... 13

B.     Did Scottsdale Owe a Duty of Good Faith and Fair Dealing to Kimberly? .......... 14

C.     Are These Claims Timely? ...................................................... 16

       1.     This Action is Not Brought by "the Insured." ............................. 16

       2.     This Action is Brought Within the Time Provided in the Policy ............... 17

       3.     The Policy is Ambiguous as to the Term "Claim" and "Make"
              and the Limitations Period. ................................................... 18

       4.     Plaintiffs' Claims Are Not "Under the Policy." ........................... 18

       5.     The Provision Is Invalid Because It Is Not Clear and Conspicuous. ....... 21

       6.     The Action Was Timely Filed. ............................................... 21

V.     CONCLUSION .................................................................. 21

# TABLE OF AUTHORITIES

## FEDERAL STATUTES

FRCP Rule 8(2) .......................................................................................... 3

## FEDERAL CASES

Mulgrew v. Sears Roebuck & Co. 868 F. Supp. 98 (E.D. Pa 1994 ................................. 3

New Memorial Associates v. Credit General Ins. Corp. (D. N.M. 1997)
    973 F. Supp. 1027, 1029 ................................ 4

Pessin v. Keeneland  Association 454 FRD 10 (E.D. Ky 1968) ......................... 3

Scotece v. Prudential Insurance Co. of America 322 F. Supp. 2d 680 (E.D. Va 2004) ... 3

Smith v. Nationwide Mut. Fire Ins. Co., 935F. Supp. 616, 619 (W.D. Pa 1996) ............. 3

## STATUTES

### CALIFORNIA STATUTES:

Code of Civil Procedure §335.1 . ................................................................ 21

Code of Civil Procedure §337 ...................................................................... 21

Civil Procedure §338) ................................................................................. 21

Insurance Code §11580(2) ...................................................................... 16, 21

### OTHER STATUTES:

Forest Preserve of Cook County, Illinois Boating Regulations ........................................... 7

Idaho Code §67-7003 ...................................................................................... 7

Missouri Code §537.327 ................................................................................. 6

N.D. Cent. Code, §20.1-13.1 ........................................................................ 7

Oregon Revised Statute §830.700 .................................................................. 8

40 Texas Administrative Code §748.3803 ...................................................... 8

Vancouver. Washington Municipal Code §15.06.04 (18) ................................. 7

White Mountain Apache Tribe Game And Fish Code §1.3  (33) ....................... 7

1

STATE CASES

2    Abari v. State Farm Fire & Casualty Co. (1988) 205 Cal. App.3d 530 .......................... 20

3    Bareno v. Employers Life Ins. Co. of Wausau (1972) 7 Cal. 3d 875 ............................. 4

4    Cal-Farm Insurance Companies v. Firemen's Fund American Insurance Cos.
            (1972) 25 Cal. App. 3d 1063 ...................................................................... 14

5

6    California State Auto. Assn. Inter-Ins. Bureau v. Warwick (1976) 17 Cal.3d 190 .......... 8

7    Eaton Hydraulics, Inc. v. Continental Casualty Co. 2005) 132 Cal. App.4th 966 ........... 21

8    Farmers Ins. Exchange v. Schepler (1981) 115 Cal. App.3d 200 .............................. 9, 10

9    Farmers Insurance Group v. Koberg (1982) 129 Cal. App.3d 1033 ................................ 9

10   Fierro v. State Bd. of Control (1987) 191 Cal. App.3d 735 ............................................ 8

11   Frazier v. Metropolitan Life Ins. Co. (1985) 169 Cal. App. 3d 90 ................................ 18

12   Haynes v. Framers Insurance Exchange (2004) 32 Cal. 4th 1198 ................................ 21

13   Johansen v. California State Auto. Ass'n. Inter Ins. Bureau (1975) 15 Cal. 3d 9 ........... 16

14   Kelley v. British Commercial Ins. Co. (1963) 221 Cal. App. 2d 554 ......................... 14, 15

15   Lawrence v. Western Mutual Ins. Co. (1988) 204 Cal. App.3d 565 .......................... 20

16   Murphy v. Allstate Insurance Co. (1978) 83 Cal. App. 3d 38 .............................. 18, 19, 20

17   Reserve Insurance Co. v .Pisciotta (1982) 30 Cal.3d 800 .............................................. 5

18   Samson v. Transamerica Ins. Co. (1981) 30 Cal. 3d 220 ............................................. 16

19   Syah v. Johnson (1966) 247 Cal. App. 2d 534, 539........................................................ 12

20   TRB Investments, Inc. v. Firemen's Fund Ins. Co. (2006) 40 Cal. 4th 19 ...................... 6

21   Velasquez v. Truck Insurance Exchange (1991) 1 Cal. App.4th 712 ............................. 20

22   White v. Western Title Insurance Co. (1985) 40 Cal. 3d 870 ......................................... 5

OTHER SOURCES

23   CACI (California Approved Civil Instructions) No. 724 ................................................. 12

24   New World Dictionary, Third College Edition ................................................................ 9

25

26

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

iii

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss - CV 08 3335 SBA

1          Come now the plaintiffs, Clarence Jonathan Wood and Heidi Collingwood, and

2  herewith submit this Memorandum of Points and Authorities in Opposition to the Motion to Dismiss

3  Complaint of Defendant Scottsdale Indemnity Company.

4  **I.        INTRODUCTION**

5          On May 25, 2002, Kayla Wood, then 12 years of age, drowned in the Trinity River

6  when the inner tube she was riding became ensnared on a submerged tree branch.  At the time,

7  Kayla was in the sole custody and supervision of Kimberly Holz Lindstrom (hereinafter "Kimberly").

8  Kayla's parents, Clarence Jonathon Wood and Heidi Collingwood, sued Kimberly in Humboldt

9  County Superior Court for the wrongful death of their daughter (hereinafter "the underlying

10  action"). On August 30, 2006, Hon. Christopher Wilson, Judge of the Humboldt County Superior

11  Court, after trial of the case, rendered judgment in favor of Kayla's parents and against Kimberly

12  in the amount of $5 million plus recoverable costs.

13          Kayla's parents bring this action against Scottsdale Indemnity Co. for breach of

14  contract and bad faith.  Plaintiffs allege that, under the facts of this case, Kimberly was an insured

15  under a policy of excess liability insurance in the amount of $1,000,000.00 that Scottsdale had

16  issued to Kimberly's parents, Ralph and Pamela Lindstrom.  Plaintiffs allege that Scottsdale failed

17  and refused to defend Kimberly or to make any attempt to settle the underlying action when given

18  an opportunity to do so, and that she suffered the resulting judgment against her far in excess of the

19  policy limit.

20          Scottsdale brings this Motion to Dismiss contending that, as a matter of law,

21  Kimberly was not an insured under the policy and that the claims of plaintiffs herein are not timely.

22  For the following reasons, the Motion to Dismiss is without merit and should be denied.  Further,

23  it is clear that, as a matter of law, Kimberly is an insured under the policy and plaintiffs therefore

24  respectfully request that the Court so order.

25  **II.       STATEMENT OF ISSUES TO BE DECIDED**

26  <u>A.</u>    <u>Was Kimberly an Insured Under the Scottsdale Policy?</u>

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

1.   Is an Inner Tube a "Watercraft" Within the Meaning of the Policy?

2.   Was Kimberly "Using" the Inner Tube at the Time of the Drowning?

3.   Did Kimberly Have "Other Insurance" to Cover This Claim?

B. <u>Did Scottsdale Owe a Duty of Good Faith and Fair Dealing to Kimberly?</u>

C. <u>Is This Action Timely?</u>

**III. STATEMENT OF RELEVANT FACTS**

The facts as set forth by defendant Scottsdale in its Motion are not in any meaningful way disputed by plaintiffs herein. However, additional undisputed facts must be considered by the Court in ruling on this Motion.

The inner tubes that were used on the date in question came from the deck of the Lindstrom cabin at Willow Creek. They belonged to Ralph and Pamela Lindstrom; there were approximately 10 of them on the deck on the morning of this incident. Plaintiffs' Index of Exhibits (hereinafter "PIOE"), Exhibit 1, 21:16 – 20. The tubes were already blown up and five of them were put in the back of Ralph's pickup to take to the river. Kimberly assisted her father in putting them in the pickup. PIOE Exhibit 1, 22:6 –14. At the put-in point at Big Rock, Kayla, Miranda Lindstrom and Emily Holz tied their three inner tubes together with rope. Kimberly assisted them in doing so. PIOE Exhibit 2, 15:4-10). After assisting the others down to the river, Ralph observed from a nearby location that they had rafted the tubes together and he "felt good about that." PIOE Exhibit 3, 24:20 - 25:1.) It was early in the season; the river was high, fast and cold. None of the girls had a life vest on. They continued down the river in this fashion until the river got more unruly, at which time Emily untied her inner tube from the others and proceeded over to her mother, Kimberly. Kayla and Miranda continued tied together down the river. PIOE Exhibit 1, 29:13-30:6.) After being on a river bank for a short period of time, where they used the rope to hold onto their inner tubes (PIOE Exhibit 2, 20:23 - 21:7.), they reentered the river. Shortly thereafter, the rope connecting the two inner tubes became entangled in a snag near a rock in the river. It was because of the entanglement in this rope that Kayla died. PIOE Exhibit 2, 8:14-22.

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale Indemnity Co. - CV 08 3335 SBA

2

IV.    **ARGUMENT**

**A Motion To Dismiss That Is Really A Motion For Summary Judgment**

A motion to dismiss is not favored and should be sustained sparingly and cautiously and then only where it appears to a certainty that no set of facts could be proven which would entitle plaintiff to any relief. <u>Pessin v. Keeneland Association</u> 454 FRD 10 (E.D. Ky 1968). In ruling on a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. <u>Mulgrew v. Sears Roebuck & Co.</u> 868 F. Supp. 98 (E.D. Pa 1994). See also, <u>Scotece v. Prudential Insurance Co. of America</u> 322 F. Supp. 2d 680 (E.D. Va 2004). Pursuant to FRCP Rule 8(2), plaintiffs are only required in the complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Where the complaint sufficiently sets forth the conditions precedent to the recovery under the insurance contract or against defendants, the motion to dismiss must be denied. <u>Smith v. Nationwide Mut. Fire Ins. Co.</u>, 935F. Supp. 616, 619 (W.D. Pa 1996) .

In this case, plaintiffs allege that, after they settled for all of the underlying insurance coverage available to Kimberly, plaintiffs offered to settle for the Scottsdale policy limits prior to obtaining judgment against Kimberly; that when Scottsdale refused to participate in settlement negotiations and to settle within the limits, they obtained a judgment against Kimberly in the amount of $5,000,000.00 plus recoverable court costs; that Kimberly assigned all of her causes of action against Scottsdale to them; that Kimberly was an insured under the Scottsdale policy in the amount of $1,000,000.00 and that Scottsdale breached the contract and acted in bad faith towards her during settlement negotiations. These allegations, if true, establish a cause of action for breach of contract and bad faith against Scottsdale. Accordingly, the Motion to Dismiss should be denied. Should the Court be of the opinion that any of the elements of breach of contract or bad faith causes of action have not been adequately pled, plaintiffs pray for leave to amend the complaint to do so.

///

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale Indemnity Co. - CV 08 3335 SBA

3

1    However, Scottsdale attached numerous matters outside of the complaint in support

2   of its contention that the defects in plaintiffs' claims are apparent on the face of the complaint.

3   Scottsdale contends that, with the facts as set forth in its Motion, plaintiffs can plead no set of facts

4   that would raise a question of fact as to whether Kimberly was an insured under the policy or that

5   the filing of the complaint herein is timely.  Plaintiffs recognize that it may be appropriate to submit

6   such additional matters in a motion to dismiss under these circumstances (New Memorial Associates

7   v. Credit General Ins. Corp. (D. N.M. 1997) 973 F. Supp. 1027, 1029), even if it converts the

8   motion into one for summary judgment.  Plaintiffs have no objection to this procedure and believe

9   that there is little dispute as to the material facts in this case.   With the addition of the facts set forth

10  above, plaintiffs contend that, as a matter of law, Kimberly **is** an insured under the policy and that

11  these claims are timely and respectfully request that the Court so order.

12  **Guidelines for Interpretation of This Contract**

13    Plaintiff's claims and Defendant's Motion rest upon an interpretation of the insurance

14  contract between Scottsdale and Ralph and Pamela Lindstrom in light of the facts of this case.   It

15  is imperative the Court do so in light of firmly established rules of construction of insurance

16  contracts.

17    The reasons for these long established rules of construction were described by Justice

18  Tobriner in Bareno v. Employers Life Ins. Co. of Wausau (1972) 7 Cal. 3d 875, 878:

19  On countless occasions we have inveighed against the careless
     draftsmanship of documents of insurance and have decried the evil

20  social consequences that flow from lack of clarity. (E.g., Paramount
     Properties Co. v. Transamerica Title Ins. Co. (1970) 1 Cal.3d 562,

21  569--570, 83 Cal. Rptr. 394; Gray v. Zurich Insurance Co. (1966)
     65 Cal.2d 263, 269--274, 54 Cal. Rptr. 104; Ensign v. Pacific Mut.

22  Life Ins. Co. (1957) 47 Cal.2d 884, 888; Continental Cas. Co. v.
     Phoenix Constr. Co. (1956) 46 Cal.2d 423, 437--438.) We have

23  emphasized that the uncertain clause leaves in its murky wake not
     only the disillusioned insured and the protesting insurer but also the

24  anguished court.

25  **We think that the responsibility for writing clear and
     simple policies lies with the insurance industry, and that the**

26

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

4

tremendous growth of insurance in this country enhances the need for such policies... [T]he... multitudes of insured persons and their beneficiaries, many of whom are unversed in the sophisticated ways of commerce, are utterly unable to decipher obscure and technical language. They are singularly dependent upon the good will and the good draftsmanship of the insurer.

**These considerations of public policy have long led courts to insist that insurers draw clear policies or suffer adverse consequences; we have consistently held that ambiguities in such documents must be resolved against the insurer.** (Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 269, 54 Cal. Rptr. 104; Continental Cas. Co. v. Phoenix Constr. Co. (1956) 46 Cal.2d 423, 437--438; Accord, Civ. Code, § 1654.) (Emphasis supplied).

In <u>White v. Western Title Insurance Co.</u> (1985) 40 Cal. 3d 870, 881, *quoting* from <u>Reserve Insurance Co. v .Pisciotta</u> (1982) 30 Cal.3d 800, 807–08, the Court observed as follows:

Construction of the policy, however, is controlled by the well-established rules on interpretation of insurance agreements. As described most recently in Reserve Insurance Co. v. Pisciotta (1982) 30 Cal.3d 800, 807-808, 180 Cal. Rptr. 628: " '[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and ... if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.' The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy. Its effect differs, depending on whether the language to be construed is found in a clause providing coverage or in one limiting coverage. **'Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured ... exclusionary clauses are interpreted narrowly against the insurer.' "** (Citations omitted.)

The Court of Appeal in Jarchow v. Transamerica Title Ins. Co. (1975) 48 Cal. App.3d 917, 941, 122 Cal. Rptr. 470, reiterated these rules in the title insurance context: "In determining what benefits or duties an insurer owes his insured pursuant to a contract of title insurance, **the court may not look to the words of the policy alone, but must also consider the reasonable expectations of the public and the insured as to the type of service which the insurance entity holds itself out as ready to offer.** (Barrera v. State Farm Mut. Automobile Ins. Co., 71 Cal.2d 659, 669, 79 Cal. Rptr. 106.) Stated in another fashion, **the provisions of the policy, ' "must be construed so as to give the insured the protection which he reasonably had a right to expect, ..." '** (Original italics.) (Gray v. Zurich Insurance Co., 65 Cal.2d 263, 270, fn. 7, 54 Cal. Rptr. 104.)" (Emphasis supplied).

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9300

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale Indemnity Co. - CV 08 3335 SBA

5

1    More simply put, if this Court finds itself questioning the meaning of any of the terms

2  of the Scottsdale policy here, it must decide in favor of plaintiffs.  It is not necessary for the Court

3  to weigh the evidence and the law and determine the exact meaning of the terms of the policy; if

4  there is a question or an ambiguity, the Court must find in favor of plaintiffs.

5  A.    Was Kimberly an Insured Under the Scottsdale Policy?

6  1.    Is an Inner Tube a "Watercraft" Within the Meaning of the Policy?

7    In order for Kimberly to be an insured under the policy, it must be under the

8  provisions which describe "Persons Insured" with respect to "watercraft." (Motion, Exhibit H, page

9  2-3).  The policy defines a watercraft as "**any** craft, boat, vessel, or ship designed to transport

10  persons or property on water" (emphasis supplied).  Can an inner tube as used under the

11  circumstances of this case reasonably be considered (1) a "craft, boat, vessel or ship" and (2) that

12  was designed to transport people or property on water?   The policy does not define the terms

13  "craft" or "vessel', nor does it define the term "designed" or describe whose design must be

14  considered. The Court must therefore consider the common meaning of those terms, the reasonable

15  expectations of the insured, and resolve all conflicts in favor of the insured.  Again, the Court need

16  not determine if inner tubes are, in fact, watercraft; if there is any reasonable question in that regard,

17  the issue must be resolved in favor of plaintiffs.

18  *A.    An Insured Can Reasonably Expect That Inner Tubes Are "Craft"*

19    The policy does not define the terms "craft, boat, vessel or ship." Plaintiffs concede

20  that inner tubes are not boats or ships, but are they crafts or vessels?  Can a reasonable

21  interpretation of these terms include inner tubes as used under the circumstances of this case?

22    Reference to statutes is an acceptable means of determining the meaning of terms.

23  TRB Investments, Inc. v. Firemen's Fund Ins. Co. (2006) 40 Cal. 4th 19, 28.  The following statutes

24  include inner tubes as watercraft:

25  Missouri Code §537.327:

26    (11) "Tube", *an inflatable tire inner tube or similar inflatable*
    *watercraft* which has an open top capable of holding one or more
    participants ... (emphasis supplied).

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

6

1    Vancouver. Washington Municipal Code §15.06.04 (18):

2    http://www.cityofvancouver.us/MunicipalCode.asp?menuid=10462&submenuID=10478&title=t
     itle_15&chapter=06&VMC=040.html

3

4            18. "*Watercraft*" means every waterborne conveyance used or
             capable of being used as a means of transportation on water,
             *including, but not limited to,* air mattresses, *inner tubes,* personal
5            watercraft, sail boats, sailboards, and any vessel propelled through
             use of an internal combustion motor or other artificial means.

6    White Mountain Apache Tribe Game And Fish Code §1.3  (33):

7    http://thorpe.ou.edu/archives/apache/gamefish.html

8
             33. "RIVER RUNNING" means moving or traveling upon any river
9            by raft, kayak, *inner tube,* canoe, *or other watercraft.*

10   Forest Preserve of Cook County, Illinois Boating Regulations:

11   http://www.fpdcc.com/tier3.php?content_id=38

12           No person shall bring into, use or navigate any boat, yacht, canoe,
             plastic, canvas or rubber raft, *inner-tube,* float-tube, sail-surf board
13           *or other watercraft* upon any watercourse, lagoon, lake, pond or
             slough under the exclusive control of the Forest Preserve District.

14
             Other statutes specifically exclude inner tubes from being considered watercraft if
15
     that is the intent of the legislative body:
16
17   Idaho Code §67-7003  IDAHO SAFE BOATING ACT:

18           (22) "Vessel" means every description of *watercraft,* including a seaplane
             on the water, used or capable of being used as a means of transportation
             on water, *but does not include* float houses, diver's aids operated and
19           designed primarily to propel a diver below the surface of the water, and
             nonmotorized devices not designed or modified to be used as a means of
20           transportation on the water, such as inflatable air mattresses, *single inner
             tubes,* and beach and water toys.

21
     N.D. Cent. Code, §20.1-13.1:
22
23           Implied consent to determine alcoholic and drug content of blood.

             Any person who operates a ... vessel in this state is deemed to have given
24           consent .... As used in this chapter ... *"vessel" means any watercraft used*
             or designed to be used *for navigation on the water* such as a boat..., a
25           sailboat other than a sailboard, an inflatable manually propelled boat, a
             canoe, kayak, or rowboat, *but does not include an inner tube,* air mattress,
26           or other water toy ... (emphasis supplied).

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

1 Oregon Revised Statute §830.700:

2          (1) "Boat" means every description of watercraft used or capable of
           being used as a means of transportation on the water, *but does not*
3          *include* aircraft equipped to land on water, boathouses, floating
           homes, air mattresses, beach and water toys or *single inner tubes*
4          (emphasis supplied).

5 40 Texas Administrative Code §748.3803:

6          (a) A non-swimmer must:
                (1) Wear a life vest; and
7               (2) *With the exception of inflatable tubes, not be in a*
                *watercraft* without an adult.
8
          The foregoing illustrate the ambiguity in the terms "craft" and "vessel." In each of
9
these instances, a legislative body recognized the ambiguity and sought to specifically eliminate it.
10
Scottsdale could have done the same. Indeed, Kimberly's own water safety expert in the underlying
11
action, John Martin Greenlaw, agreed that the inner tubes as used by the Lindstrom family were
12
watercraft and he discussed the long history of people using inner tubes as watercraft dating back
13
to the turn of the 20th Century. PIOE Exhibit 4, 24:23-26:15. Although, in hindsight, Scottsdale
14
would have us refer to the dictionary definitions of these terms as it has selected, this is not required
15
by the policy and it is the reasonable expectations of the insured that must be considered. Nor do
16
the any of the dictionary definitions offered by Scottsdale preclude a reasonable expectation that
17
inner tubes may be watercraft.
18
          Further, Scottsdale's use of the term **any** in its policy is all inclusive. The policy does
19
not even attempt to narrow or limit the size of a craft capable of being considered a watercraft; the
20
coverage clause does not place any restrictions on the type, class or quality of the craft. By
21
placing the word "any" before the word "craft," the policy must be read expansively to include all
22
or every size of craft. *See* California State Auto. Assn. Inter-Ins. Bureau v. Warwick (1976) 17
23
Cal.3d 190, 195 ("the "word 'any' means every,") "The word 'any' has consistently been interpreted
24
as broad, general and all embracing." Fierro v. State Bd. of Control (1987) 191 Cal. App.3d 735,
25
741.
26

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

8

1      Plaintiffs submit that, when the policy is interpreted most expansively in favor of

2  coverage, as this Court is required to do, insureds under the circumstances of this case could

3  reasonably expect that inner tubes that are kept and maintained by them at their home for the sole

4  reason of transporting people down river are watercraft under this insurance policy.

5  B.      *These Inner Tubes Were Designed to Transport People or Property On Water*

6      Scottsdale did not discuss the requirement in the definition that the craft must be

7  "**designed** to transport persons or property on water."   However, plaintiffs anticipate Scottsdale

8  will argue that these tubes were designed to inflate truck tires and not to carry people on water.

9  However,  the policy does not state whose design is to be considered.  It does not state that it is the

10  design of the original manufacturer that is to control.  Nor is the term "design" defined.  Webster's

11  New World Dictionary, Third College Edition, includes in the definition of design "to intend or set

12  apart for some purpose."  Exhibit 5.

13      The case of Farmers Insurance Group v. Koberg (1982) 129 Cal. App.3d 1033 is

14  very instructive as to whose design is determinative.  In Koburg, the insured was injured in a dune

15  buggy accident.  Farmers denied coverage on the basis that the dune buggy was not an "automobile"

16  within the meaning of the policy.  The policy defined "automobile" as a 4-wheeled vehicle "designed

17  for use principally upon public roads ...."  Id. at 1035.  Koberg contended that the case of Farmers

18  Ins. Exchange v. Schepler (1981) 115 Cal. App.3d 200, which considered the design of the

19  manufacturer as to the use of the vehicle to be controlling, was dispositive.   The Court held

20  otherwise:

21          The Schepler court properly focused upon the manufacturer's
           intent because the owner of the vehicle and holder of the policy was
22          the manufacturer and his intent was also relevant to his expectations
           of policy coverage. **But that test has no sensible application
23          where, as here, the manufacturer is not the owner and the owner
           has formed and made effective his intent regarding the use of the
24          vehicle. In these circumstances, where the owner is not the
           manufacturer, a vehicle is " 'designed for use principally on
25          public roads' " when it is the intent of the owner that the vehicle
           be so used and the vehicle is adapted for such use.**

26

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA
9

1

        The facts are undisputed that the owner of the dune buggy,
Blankers, had no intent to use the vehicle for any purpose other than

2       off-road use and that the vehicle was so registered, equipped and
used. **Since the dune buggy was exclusively intended by the**

3       **owner and adapted for off-road use, it was not an "automobile"**
**within the meaning of the Farmer's Insurance Group policy.**

4

5   Id. at 1036-37.

6         It is undisputed here that Ralph and Pamela Lindstrom had no intent to use these

7   truck tire inner tubes to put inside a truck tire; the sole purpose they had for them was to transport

8   people and property over water.  Ralph not only had that intent, he made it effective by storing the

9   tubes on the porch of his river property and loaning them out to family and friends for this purpose,

10   by driving his daughter and the girls to the river, and in approving of the attachments of ropes to lash

11   the tubes together and which the girls used to control the inner tubes, and which ultimately caused

12   Kayla's death. Kimberly's design in this case for these inner tubes was clearly to transport people

13   on water.  She, Kayla, Miranda and Emily designed the craft that the girls were on by lashing the

14   three inner tubes together with rope as a craft to transport them down river.  Kayla and Miranda

15   used the rope with which they lashed the tubes together to hold onto the tubes while they were on

16   the river bank.

17         Defendant states that no cases have held that an inner tube is a watercraft.  Of course,

18   Scottsdale offers no case law holding an inner tube is not a watercraft.  The language of the policy

19   is Scottsdale's and it was free to exclude any mechanism that it did not wish to insure.  It failed to

20   exclude any specific device.  Defendant suggests that no reasonable person could conclude that an

21   inner tube in a swimming pool or a piece of plywood, a kickboard, or floating chair are "watercraft."

22   To the contrary, these items, if intended for transporting persons or property over water, and not

23   specifically excluded, may very reasonably be considered watercraft for purposes of a homeowners

24   policy of insurance.

25         When the reasonable expectations of the insured under these circumstances are

26   considered, it is clear that these inner tubes were watercraft within the meaning of the policy. Ralph

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

10

1    and Pamela Lindstrom purchased homeowners insurance on their Trinity River vacation property

2    in Willow Creek and on their home in Eureka through Foremost and Hartford, with limits of

3    $300,000.00 and $500,000.00, respectively.  They then purchased a "Personal Umbrella Liability"

4    policy from Scottsdale with an additional $1,000,000.00 limit to provide further peace of mind in

5    the event of a catastrophic occurrence.  PIOE Exhibit 3, 34:7 - 35:19.  When that catastrophe

6    occurred with the death of Kayla, they reasonably looked to Foremost and Hartford to defend and

7    indemnify them for this tragic loss.  Those carriers honored their contractual obligations and

8    defended Ralph, Pamela and Kimberly against the Wood/Collingwood complaints.  After Ralph and

9    Pamela were granted summary judgment on the liability issue, the action continued against Kimberly

10   alone.  Both carriers continued to defend Kimberly and paid their indemnity limits in settlement of

11   the claims against Kimberly alone.  After the exhaustion of the primary coverages available to

12   Kimberly, Scottsdale not only didn't step in and defend Kimberly, but refused to even respond to

13   settlement opportunities offered by the plaintiffs.

14          Ralph and Pamela Lindstrom kept and maintained the inner tubes used on this

15   occasion at their home in Willow Creek on the Trinity River.  They kept them there for the sole

16   purpose of using them to float down the river, to transport people, beer and sandwiches, over water.

17   When, on May 25, 2002,  they entrusted the inner tubes to Kimberly, they did so for the specific

18   purpose of having her accompany their granddaughters (Jessica and Emily), one of the kids' cousins

19   (Miranda) and Kayla, plaintiffs' daughter, who was specifically entrusted to the care of Kimberly by

20   her father, down the river in the inner tubes.   The tubes were being used exactly as intended by the

21   named insured for the purpose intended by the named insured.  Construing these definitions most

22   favorably to coverage, as the Court is obligated to do, it is clear that the inner tubes used on the day

23   of Kayla's death were watercraft within the meaning of the policy.

24          Having determined that an insured could reasonably expect that the inner tubes as

25   used on this occasion would constitute "watercraft" within the meaning of the policy, was coverage

26   thereby afforded to Kimberly?

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

11

1   2.      Was Kimberly Holz Lindstrom "Using" the Inner Tube at the Time of the Drowning?

2           One alternative definition of an insured with respect to watercraft is "any person

3   **using** ... [the] watercraft with the permission of the named insured and for the purposes intended

4   by the named insured." (Emphasis supplied). There is no question that these tubes were being used

5   with the permission of and as intended by the named insureds. Scottsdale, however, contends that

6   Kimberly was not "using" the inner tube that caused Kayla's death. The policy defines "using" as

7   "maintaining, entrustment to others, operating, loading, or unloading."

8           Kimberly was the sole responsible adult supervising four minor girls on this entire

9   trip. As the trip began, Kimberly loaded and unloaded the tubes from the pickup and entrusted them

10  to the girls at the river. Further, she assisted Kayla, Miranda and Emily in lashing their inner tubes

11  together with rope.   Clearly, the insured could reasonably expect that this activity would be

12  considered use of the inner tube that caused Kayla's death.

13          Defendant's selected dictionary definition of "entrust" requires some measure of

14  confidence by the entrustor. However, the term entrust has the common simple meaning of allowing

15  another person to use. This is evident in the law of negligent entrustment of motor vehicles. The

16  CACI jury instruction on Negligent Entrustment, No. 724, with respect to the issue of entrustment,

17  provides only that the defendant "permitted [the driver] to use the vehicle." See also, Syah v.

18  Johnson (1966) 247 Cal. App. 2d 534, 539. There is no requirement of confidence as suggested by

19  defendant.  The common interpretation of entrustment of a piece of equipment would be to allow

20  someone else to use it or to operate it.  That is exactly what Kimberly did in this instance.  She was

21  entrusted the inner tubes by her father; she in turn entrusted them to the children.  In addition, she

22  assisted in loading the inner tubes and assisted in their operation by the girls.

23          Under these circumstances, the reasonable expectation of the insured would be that

24  Kimberly was "using" these inner tubes at the time of Kayla's death.  Simply because Kayla was

25  using the tube at the time does not negate Kimberly's use of it as well.

26  ///

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

12

3.     Did Kimberly Have "Other Insurance"

An alternative definition of an insured with respect to watercraft under the policy is "any person or organization legally responsible for the use of such... watercraft, but only if no **other insurance** of any kind **is available** to that person or organization for such liability." (Emphasis supplied). Once again, the policy language is Scottsdale's. There is no question that Kimberly was a person legally responsible for the use of these inner tubes.

Scottsdale points to the exhausted Foremost and Hartford policies as "other insurance" available to Kimberly. The specific policy language, however, states that there must presently be other insurance available to preclude coverage. The term "is" means the present third person of the verb to be. At the time of the acts alleged in the complaint, all other insurance coverage for Kimberly, the Foremost and Hartford policies, had been exhausted. Scottsdale can point to no other insurance indemnity coverage that existed at the time of the acts that are complained about in the subject complaint. Scottsdale tacitly concedes this when it argues that "there **was** other insurance **that applied** to Holz Lindstrom's liability ..." (Motion, page 18, line 10-11, emphasis supplied.) The fact that there was insurance that applied to the liability is not the issue; the exclusionary language requires other insurance to presently be available. While it would have been an easy matter for Scottsdale to have said in its policy "only if other insurance of any kind is **or was** available to that person," it did not.

And what is meant by "other insurance"? In subdivision G of the Conditions of the policy, entitled "Other Insurance" it is specifically provided as follows:

> The insurance afforded by this policies shall be excess over any other insurance collectible by the insured, irrespective of whether such insurance is stated to be primary, contributing, excess, contingent, or otherwise ....

This language is consistent with the very nature of excess or umbrella coverage. Obviously, the coverage applies in excess of other scheduled underlying insurance which was available to the insured, but which must necessarily have been exhausted through settlement or

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale Indemnity Co. - CV 08 3335 SBA

13

1   otherwise for the coverage provided by the excess policy to become applicable.  Does the "other

2   insurance" provision in the exclusionary language mean other excess insurance?  Certainly, a

3   reasonable person would construe the provision relied upon by Scottsdale as meaning that this

4   coverage does not apply if there is any other existing insurance coverage for the person being

5   afforded insurance under this definition of insured **other than the underlying coverage**.  Kimberly

6   had no insurance other than the underlying coverage that was available to pay this claim.  The <u>Cal-</u>

7   <u>Farm Insurance Companies v. Firemen's Fund American Insurance Cos.</u> (1972) 25 Cal. App. 3d

8   1063 case, cited by defendant, does not hold otherwise.  In that case, two primary carriers argued

9   about whether one should contribute to defense and settlement costs incurred by the other.  The case

10  has no application to the situation where an excess carrier argues that there is other insurance

11  available due to the previous existence of primary coverage that has been exhausted.  To accept such

12  an argument would completely negate the coverage afforded to the insured under the policy!  There

13  is no excess coverage because there was underlying primary coverage?  That's an interesting

14  interpretation of the policy.  The reasonable expectations of the insured would likely be frustrated

15  by that concept.

16          There is no ambiguity in the Scottsdale policy: the exclusion only applies if there is

17  then existing other insurance coverage than the primary coverage.  It does not apply when other

18  primary coverage as specifically identified in and required by the policy previously existed, but was

19  then exhausted.

20  <u>B.</u>      <u>Did Scottsdale Owe a Duty of Good Faith and Fair Dealing to Kimberly?</u>

21          Scottsdale next maintains that, even if Kimberly was an insured under the policy, as

22  an excess carrier with policy language as cited by Scottsdale, it had no obligation to defend or settle

23  this matter.    Regardless of whether Scottsdale had an obligation to defend Kimberly, it

24  unquestionably had a duty to deal in good faith with reasonable settlement demands, as was decided

25  in <u>Kelley v. British Commercial Ins. Co.</u> (1963) 221 Cal. App. 2d 554, 562-63:

26

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale Indemnity Co. - CV 08 3335 SBA

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Appellant next contends that respondent failed to sustain the burden of proving that appellant was guilty of bad faith in failing to settle the case within the limits of its insurance coverage. We do not agree. It is now settled in California that a policy of public liability insurance pursuant to which the insurer reserves the right to defend an action on a claim arising under the policy, and is authorized to settle the same within the policy limits, imposes upon the insurer the obligation to exercise good faith in considering an offer of compromise within those limits. (Davy v. Public National Ins. Co. (1960), 181 Cal. App.2d 387, 394, 5 Cal. Rptr. 488; Hodges v. Standard Accident Ins. Co. (1961), 198 Cal. App.2d 564, 571, 18 Cal. Rptr. 17; Comunale v. Traders & General Ins. Co. (1958), 50 Cal.2d 654, 659-661; Ivy v. Pacific Automobile Ins. Co. (1958), 156 Cal. App.2d 652, 659; Brown v. Guarantee Ins. Co. (1957), 155 Cal. App.2d 679, 682.) In determining whether an offer of settlement is reasonable, the insurer, although entitled to protect its own interests, does not have the right to sacrifice the interests of the insured. (Ivy v. Pacific Automobile Ins. Co., supra, 156 Cal. App.2d at p. 659, 320 P.2d at p. 145.) Where there is a great risk of recovery beyond the policy limits and the most reasonable manner of disposing of the claim is a settlement within those limits, a good faith consideration of the insured's interests requires the insurer to settle the claim. (Comunale v. Traders & General Ins. Co., supra, 50 Cal.2d at p. 659, 328 P.2d at p. 201.)

Appellant urges, however, that it owed no duty of good faith toward its insured because it occupied the position of a secondary or excess carrier and took no active part in the defense of the Kelley action. This argument is untenable. First of all, appellant's control over the settlement negotiations was clearly separate and distinct from its right to take over the defense of the action. The public liability policy issued to Olson and Thacker specifically prohibited the insured from entering into any settlement in excess of Industrial's $5,000 coverage without first obtaining appellant's written consent. Since appellant alone had the authority to agree to a settlement in excess of $5,000, it was obviously under a duty to exercise good faith toward its insured in considering any offer of compromise within the limits of its policy. Furthermore, the fact that appellant took no active part in the defense of the Kelley action was entirely of its own choosing. Industrial tendered the full amount of its coverage prior to the commencement of the trial and offered to allow appellant to take over the defense. Appellant elected to reject this offer.

Under Kelley, it is clear that Scottsdale, even in its position as an excess or umbrella carrier, owed the duty of good faith and fair dealing to Kimberly in considering settlement proposals to her. Rather than honoring that duty, however, Scottsdale refused all offers to participate in her defense and settlement negotiations and failed to respond in any manner to plaintiffs' offer to settle

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale Indemnity Co. - CV 08 3335 SBA

15

1   within the policy limits.  When an insurance carrier relies upon coverage defenses to deny a defense

2   and to reject reasonable settlements offers, it does so at its own peril.  If it is wrong, it acts in bad

3   faith and is responsible for the entire amount of the judgment against the insured..  Samson v.

4   Transamerica Ins. Co. (1981) 30 Cal. 3d 220; Johansen v. California State Auto. Ass'n. Inter Ins.

5   Bureau (1975) 15 Cal. 3d 9.

6   C.    Are These Claims Timely?

7        Having already attempted to convince the Court that Kimberly is not "an insured,"

8   Scottsdale then makes an argument that requires the Court to find that Kimberly is an insured.

9   Scottsdale wants the Court to find that this action, brought by Wood and Collingwood, is barred

10  under language in the policy set forth in Condition F(3): "any claim against the company **by the**

11  **insured under**... **this policy** shall be made within 12 months..."  Motion, Exhibit H, page 7.

12  Clearly, this contention is without merit.

13       *1.    This Action is Not Brought by "the Insured."*

14       First, the claims of plaintiffs herein are not claims against the company by "the

15  insured." The policy itself defines "insured" as "any person... qualified as an insured in the "persons

16  insured" provision of this policy." The "Persons Insured" provision of the policy is located at pages

17  2-3 of the policy and, clearly, none of these provisions apply to either plaintiff Wood or plaintiff

18  Collingwood.  This is probably why Scottsdale, earlier in its Motion, admits that **"[h]ere, Plaintiffs**

19  **are not insureds under the Policy**..." Motion, 11:20-21 (emphasis supplied).

20       Despite this admission, Scottsdale asks the Court to find that plaintiffs are barred

21  under this Condition of the policy.  In order for the Court to do so, it must first find that Kimberly

22  is an insured within the meaning of the policy.  Plaintiffs are confident the Court will do so as a

23  matter of law.  However, this Condition still does not apply to the claims in this action.

24       Insurance Code §11580(2) provides that judgment creditors of an insured may

25  proceed against an insurance policy under the same terms and conditions as the insured.  Plaintiffs

26

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

16

1  Clarence Jonathan Wood and Heidi Collingwood are judgment creditors of the insured with respect

2  to the policy limits. To the extent that they bring this action as judgment creditors of Kimberly, they

3  do not seek to enforce her rights or through her, but are enforcing their own rights.

4         To the extent that plaintiffs are proceeding as assignees of Kimberly, this Condition

5  still is not a bar: plaintiffs as assignees simply do not fall within the definition of "insured" in the

6  policy. Defendant could easily have expanded the language of this provision to something such as

7  "the insured, or any assignees or persons obtaining an interest in this policy through the insured,"

8  but did not do so. (See e.g., Conditions ¶E(1)(c), at p. 7 of the policy which uses the term "Any

9  applicable retained limit ... shall have been paid **by or on behalf of the insured**.") There is no

10 ambiguity in this language whatever; by its express terms, the contract limitations period does not

11 apply to plaintiffs. If there is any ambiguity, construing the language of the exclusion most narrowly

12 to provide coverage compels the conclusion that this language simply does not apply to plaintiffs.

13     2.    *This Action is Brought Within the Time Provided in the Policy.*

14         The policy provides that the claim must be made within 12 months after the insured

15 **"pays or becomes legally obligated to pay** an amount of ultimate net loss ...". By the express

16 language of the policy, the claim must be made within 12 months of either the insured paying the

17 amount she is legally obligated to pay, or becoming legally obligated to pay an amount. What isn't

18 said and Scottsdale wants the Court to read into the policy is that the claim must be made within 12

19 months of either of these occurrences, **which ever occurs first**. The policy, however, simply

20 requires the claim to have been made within 12 months of either the legal obligation to pay or

21 payment by the insured. While, here, suit was not filed within 12 months of Kimberly becoming

22 legally obligated to pay, she has paid nothing of the "amount of ultimate net loss within the

23 company's limit of liability." Accordingly, by the plain language of the policy, the period for

24 presenting claims has not started. Had Scottsdale intended that the occurrence of either of those

25 events would trigger the limitations period, **which ever occurs first**, it could easily have placed this

26 language in the policy and removed any ambiguity. It did not do so and, clearly, this action was

timely filed

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

17

3.   *The Policy is Ambiguous as to the Terms "Claim" and "Make" and the Limitations Period.*

Nor does the policy define the term "claim" or what it takes to "make" a claim. Does it mean to filing suit? Does it mean writing and asking for coverage or for indemnity, which clearly was done in this case prior to the entry of judgment? After the insurance company has unequivocally denied all coverage, a defense and indemnity and refused to participate in any settlement negotiations, does the insured have any further obligation to advise the Company of the potential claim in order to make a claim? For purposes of this Motion, Scottsdale has completely failed to negate a "claim" being "made" against it before 12 months after the finality of the judgment.

The confusion is further compounded by discrepancies in the policy regarding what must be done: Condition E (at page 6 of the policy) sets forth the conditions for an "Action against the Company," which this is, and no mention of a time limitation is contained therein. Condition F, relied on by defendant, relates only to "Payment of Loss."

4.   *Plaintiffs' Claims Are Not "Under the Policy."*

Moreover, these claims are not being made "under ... this policy." The Courts have uniformly held that bona fide bad faith claims are not actions under the policy. <u>Frazier v. Metropolitan Life Ins. Co.</u> (1985) 169 Cal. App. 3d 90; <u>Murphy v. Allstate Insurance Co.</u> (1978) 83 Cal. App. 3d 38. In <u>Murphy</u>, Allstate contended that the plaintiff's action for bad faith was precluded by the 12 month statute of limitations set forth in <u>Insurance Code</u> §2071. The Court concluded that such an action was not "on the policy" and the limitations period not applicable for the following reasons:

> Allstate asserts that plaintiffs' bad faith claim is based upon alleged breaches of the implied duty of good faith and fair dealing which arises only because of the contract of insurance between it and plaintiffs and contends, therefore, that a cause of action for bad faith must be deemed to be an action "on the policy." Allstate's assertions are essentially correct; its contention, however, is unsound. First, while it is true that a bad faith claim is predicated upon a breach of the duty of good faith and fair dealing that arises out of the contractual relationship between the parties (e. g., Murphy v. Allstate Ins. Co., 17 Cal.3d 937, 940-941, 132 Cal. Rptr. 424; Johansen v.

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale Indemnity Co. - CV 08 3335 SBA

18

California State Auto. Assn. Inter-Ins. Bureau, 15 Cal.3d 9, 18, 123 Cal. Rptr. 288; Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566, 577, 108 Cal. Rptr. 480) and while the implied covenant of good faith and fair dealing is "immanent in the contract" (Gruenberg v. Aetna Ins. Co?, supra, 9 Cal.3d at p. 575, 108 Cal. Rptr. 480), the duty of good faith and fair dealing is not strictly a contractual obligation. It is an obligation imposed by law which governs a party to a contract in discharging its contractual responsibilities. As the court explained in Gruenberg : "Thus in Comunale (Comunale v. Traders & General Ins. Co., 50 Cal.2d 654) and Crisci (Crisci v. Security Ins. Co., 66 Cal.2d 425, 58 Cal. Rptr. 13) we made it clear that '(l)iability is imposed (on the insurer) not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing.' (Citation.) In those two cases, we considered the duty of the insurer to act in good faith and fairly in handling the claims of third persons against the insured, described as a 'duty to accept reasonable settlements'; in the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." (9 Cal.3d at pp. 573-574, 108 Cal. Rptr. at p. 484, 510 P.2d at p. 1037.) (Emphasis in original deleted.)

Moreover, there is a significant difference between "arising out of the contractual relationship" and "on the policy." In a broad sense, all of plaintiffs' alleged causes of action may be said to "arise out of the contractual relationship" but as we have seen, they are not actions "on the policy." Much of the conduct complained of in the third and fourth causes of action occurred long after the fire loss and related to the repair and restoration of plaintiffs' home and personal property and the employment of persons and firms to do that work, the institution and prosecution of the interpleader action. Here again, the damages claimed were not caused by any risk insured against under the policy and were not recoverable under the policy. We conclude the third and fourth causes of action are not actions "on the policy" and are not barred by the statutorily mandated 12-month limitation provision.

Id. at 48-49.

Plaintiffs anticipate that Scottsdale will argue that a line of cases in which the Court determined that claims of bad faith were, in reality, nothing more than restatements of claims under

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale Indemnity Co. - CV 08 3335 SBA

19

1  the policy, apply here. <u>Velasquez v. Truck Insurance Exchange</u> (1991) 1 Cal. App.4th 712; ; <u>Abari</u>

2  <u>v. State Farm Fire & Casualty Co.</u> (1988) 205 Cal. App.3d 530; <u>Lawrence v. Western Mutual Ins.</u>

3  <u>Co.</u> (1988) 204 Cal. App.3d 565. Those cases do not apply. In each of those cases, the Court

4  affirmed the contractual statute of limitations in a first party property damage claim. This is

5  understandable as the insured has a claim against the insurance company upon the occurrence of a

6  loss of property. Nothing further need take place for the insured to have a claim. In this context,

7  the insurance carrier's actions handling of the claim itself are subsumed within the rubric of an

8  "action on the policy".

9        In <u>Velasquez v. Truck Insurance Exchange</u> (1991) 1 Cal. App.4th 712, the Court was

10  concerned with a first party fire damage claim. The carrier denied the claim on the basis of prior

11  cancellation of coverage for nonpayment of premium. More than two years after the date of the

12  loss, plaintiffs filed suit. In finding the action "under the policy," the Court reasoned:

13          It is true that appellants seek additional damages as well. Such
           damages, however, relate solely to their allegations of denial of their

14          claim and wrongful cancellation and not to any additional acts by
           Farmers. The two claims are inextricably bound. **None of the actions**

15          **alleged by appellants as bad faith relate to events subsequent to**
           **initial policy coverage so as to convert their action from one on**

16          **the policy to one which is not.**

17  <u>Id</u>. at 722 (emphasis supplied).

18        In a third-party personal liability situation, however, neither the insured nor the third-

19  party have any legally enforceable rights **under the policy** against the insurance company without

20  having first obtained a final judgment against the insured. However, even prior to the establishment

21  of liability of the insured through judgment, the insurance carrier is obligated by law to deal in good

22  faith and to handle the claim with the insured's interests paramount. This is a separate and implied

23  obligation of the contract that is imposed upon the insurer by law before any obligation to indemnify

24  under the policy arises. <u>Murphy</u>, <u>supra</u>.

25        In this case, the allegations of the complaint are that Scottsdale violated its implied

26  duties of good faith and fair dealing by failing to participate in settlement negotiations and to accept

a reasonable settlement offer within the policy limits. This conduct occurred before and separate

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

20

1   from any of its contractual obligations to indemnify, which did not arise until final judgment was

2   entered against its insured.  Accordingly, the contractual limitations period clearly does not apply.

3       *5.    The Provision Is Invalid Because It Is Not Clear and Conspicuous.*

4       The contractual limitations period is invalid as it is not conspicuous, plain and clear.

5   In Haynes v. Framers Insurance Exchange (2004) 32 Cal. 4th 1198, 1204, the California Supreme

6   Court observed:

7           In the insurance context, "we begin with the fundamental
            principle that an insurer cannot escape its basic duty to insure by
8           means of an exclusionary clause that is unclear. As we have declared
            time and again 'any exception to the performance of the basic
9           underlying obligation must be so stated as clearly to apprise the
            insured of its effect.' " (State Farm Mut. Auto. Ins. Co. v. Jacober
10          (1973) 10 Cal.3d 193.

11      In Haynes, the Court found that a provision setting forth a different policy limit for

12  permissive users in an automobile liability policy was invalid because it was not plain and

13  conspicuous.  For the same reasons, the limitations period in Scottsdale's policy is invalid.  There

14  is nothing conspicuous about the provision that would alert the reasonable policy holder to its

15  restrictions.

16      <u>*6.*</u>    *The Action Was Timely Filed*

17      Kimberly's cause of action accrued when the judgment against her became final.

18  Eaton Hydraulics, Inc. v. Continental Casualty Co. 2005) 132 Cal. App.4th 966.  The trial Court

19  entered judgment on August 30, 2006; it became final six months thereafter, on February 28, 2007.

20  The tort statute of limitations is two years (Code of Civil Procedure §335.1); the statute of

21  limitations for an action upon a liability created by statute (e.g. Insurance Code §11580(2)) is three

22  years (Code of Civil Procedure §338); and the statute of limitations for breach of a written contract

23  is four years (Code of Civil Procedure §337).   The subject complaint was filed well within any of

24  the above limitations periods.

25  **V.    CONCLUSION**

26      Scottsdale's Motion to Dismiss attempts to turn the longstanding rules of

interpretation of insurance contracts on their head.  When it comes to provisions which afford

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA
21

SBA

1   coverage, Scottsdale asks the Court to read the contract narrowly.  With respect to the term

2   "watercraft," without having fulfilled its responsibility to set forth clear definitions in its policy,

3   Scottsdale asserts that inner tubes which are kept and maintained solely for the purpose of

4   transporting people and property over water somehow do not fall within the reasonable person's

5   expectation of a watercraft.  Scottsdale wants the Court to adopt a narrow construction of the term

6   "using."   It asks the Court to adopt a narrow construction of the term "entrustment."

7           Scottsdale wants to have all of the provisions of the policy which deny or exclude

8   coverage to be read expansively:  With respect to use of the term "is," Scottsdale asks the Court to

9   read into the policy "is or was" to deny coverage.  Scottsdale asks the Court to change the term "is

10  available" to "was applicable."  As to the contractual limitations period, Scottsdale asks the Court

11  to ignore the policy's definition of the term "insured" (and, apparently, Scottsdale's admission in its

12  Motion that plaintiffs herein are not insureds) and read into the policy "the insured or any of her

13  assignees, judgment creditors, or any other persons or entities taking any interest of any nature

14  through the insured."  It asks the Court to read "which ever occurs first" into the alternative

15  triggering point of the 12 month limitations period.

16          All of this, of course, is contrary to long established law.  When read in light of the

17  facts of this case and the pertinent legal authorities, it is clear that Kimberly was, as a matter of law,

18  an insured under the policy and that Scottsdale is liable for all of the damages requested in the

19  complaint.  Accordingly, this Motion should be denied.  Again, if for any reason the Court believes

20  that the complaint fails to state a cause of action, plaintiffs respectfully request leave to amend.

21  Further, plaintiffs are entitled to an order determining that, as a matter of law, Kimberly was an

22  insured under the policy.

23  DATED:        August 28, 2008              LAW OFFICES OF DAVID P. DIBBLE

24

25                                            By: _____
                                                   David P. Dibble, Esq.
26

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

22

1   DATED:

         8/28/08

2

3

4

LAW OFFICES OF ZACHARY ZWERDLING

By: _____
     Zachary E. Zwerdling, Esq.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Law Offices of David Dibble
123 F Street, Suite D
Eureka, CA 95501
(707) 444-9330

Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale
Indemnity Co. - CV 08 3335 SBA

23

**PROOF OF SERVICE**

I am a citizen of the United States and a resident of the County of Humboldt.  My business address is 123 F Street, Suite C, Eureka, California 95501.  I am over the age of 18 years and not a party to the within cause.

On this date,  I served the following documents: *Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss Complaint of Defendant Scottsdale Indemnity Company*

[X]   **BY MAIL:**  By placing a true copy thereof enclosed in a sealed envelope, addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown below, following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

[ ]   **BY FAX:**  By transmitting a true copy thereof from fax telephone number (707) 443-0442 at _____ a.m./p.m. to the person(s) at the fax number(s) indicated below.  The transmission was reported as complete and without error, and such transmission report was properly issued by the transmitting fax machine.  A true copy of that transmission report is attached to the original proof of service filed herein.

[ ]   **BY PERSONAL SERVICE:** By placing a true copy thereof enclosed in a sealed envelope, addressed as shown below and delivering same to the individual named below or to that individual in care of a member of his/her office, prior to 5:00 p.m.

[ ]   **BY OVERNIGHT DELIVERY:** By placing a true copy thereof enclosed in a sealed envelope addressed as shown below and depositing said envelope in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for.

Attorney for Scottsdale Indemnity Company
Linda Wendell Hsu, Esq.
**Selman Breitman LLP**
33 New Montgomery, Sixth Floor
San Francisco, CA 94105

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct .

Executed on August 28, 2008 at Eureka, California.

STEPHANIE ESKRA

Zwerdling Dibble, LLP
123 F Street, Suite C